J-S76001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.E.R., Jr., A MINOR | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.R., FATHER | : : | |
| | : | No. 2182 EDA 2017 |

Appeal from the Order Entered June 13, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No. CP-51-AP 0000601-2017

BEFORE: PANELLA, J., STABILE, J., and PLATT*, J.

MEMORANDUM BY PANELLA, J.                    **FILED JANUARY 25, 2018**

C.R. ("Father") appeals the order of the Court of Common Pleas of Philadelphia County, entered on June 13, 2017, that terminated his parental rights to his son, C.E.R., Jr. ("Child"), born in May 2008, and changed Child's goal to adoption.[1] We affirm.

Child first encountered Philadelphia's Department of Human Services (DHS) in June 2009, when DHS removed Child, who was thirteen months old, and his siblings[2] from Mother's care. Child and his siblings remained in foster care until January 2011, when the court ended supervision and reunified Child with Mother.

---

* Retired Senior Judge assigned to Superior Court.

[1] The court also terminated the parental rights of Child's mother, T.D.A.P. ("Mother"). Mother did not appeal that termination.

[2] Child's siblings have different fathers and are not subjects of this appeal.

Child came back into care in March 2014, when DHS received a General Protective Services report alleging that Philadelphia police officers had found Mother under the influence of Phencyclidine (PCP)[3] and unable to care for her children. The police placed the children with DHS because no family members were available to care for them and their fathers were not identified. The report also alleged Mother's home was unkempt. This report was substantiated.

DHS obtained an Order of Protective Custody for all Mother's children, including Child, on March 5, 2014, and placed them in foster care. The court adjudicated Child dependent on March 14, 2014, and committed him to the custody of DHS.

DHS developed a Family Service Plan with the goal of reunification. Father's objective was to make his whereabouts known to DHS. Rodney Hill, the DHS social worker responsible for the case, testified that Father never was in contact with DHS, nor did he make it known to DHS in any way that he was ready, willing, and able to care for Child. According to Hill, Father never appeared at any court listing prior to the termination hearing. Hill testified further that when he took over the case in August 2015, he sent correspondence for Father to the last known address DHS had for him. He did not receive a response, and the correspondence was not returned as

---

[3] For a description of the pernicious effects of this drug, we refer the interested reader to Drugs.com, PCP (Phencyclidine) Effects of PCP Use, available at https://www.drugs.com/illicit/pcp.html (last visited January 3, 2018).

undeliverable. In January 2017, Hill learned Father had been in prison, but was out on parole.

In March 2017, Father put his current address on his marriage license, which enabled DHS to issue a subpoena to him when it ran another parent locator search in May 2017. Father contacted Hill when he received the subpoena. Hill arranged for Father to visit Child in May 2017. This one visit was the only contact Father had with Child during the life of the case.

Father testified he was incarcerated at a state correctional facility from June 9, 2013, until his release on December 19, 2016. Father claimed that during his time in prison, he sent letters to Mother at least once a month but that she never responded. Father stated he did not know Child was in DHS custody and believed he was with Mother. Father also claimed that after his release from prison, he attempted to contact Child at Mother's last known address, and then her mother's house, but she no longer resided there.

Father agreed that Child appeared to be well taken care of and he knew Child was doing well in the home of his pre-adoptive caregiver. He stated, however, that he wanted to build a relationship with Child.

Child is in a pre-adoptive home where he shares a strong bond with his foster mother and looks to her for all his daily needs. She attends to his schooling and medical care. Father never inquired about Child's birthdays, holidays, school or educational events. Hill did not believe Child would suffer irreparable harm if Father's parental rights were terminated because Child

never knew who his father was, had just recently met him, and there is no bond between them.

DHS filed its termination petition on May 26, 2017. The court entered its decree terminating Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a) (1), (2), and (b), and changing Child's goal to adoption on June 13, 2017. Father then timely filed his notice of appeal and concise statement of errors complained of on appeal.

Father raises the following questions for our review:

1. Whether the [t]rial [c]ourt erred in [t]erminating [Father's] [p]arental [r]ights under 23 Pa.C.S.A. section 2511(a)(1), the evidence having been insufficient to establish Father had evidenced a settled purpose of reliquishing [sic] parental claim, or having refused or failed to perform parental duties[?]

2. Whether the the [sic] evidence was sufficient to establish that [Father] had refused or failed to perform parental duties, caused Child to be without essential parental care, that conditions having led to placement had continued to exist, or finally that any of above could not have been remedied[?]

3. Whether the [e]vidence was sufficient to establish that [t]ermination of [p]arental [r]ights would best serve the [n]eeds and [w]elfare of the [m]inor [c]hild, under 23 Pa.C.S.[A.] section 2511(b)[?]

Father's Brief, at 5.[4]

We review Father's claims mindful of our well-settled standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law

---

[4] Father did not raise the question of the trial court's change of Child's goal.

or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

The court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b). We need only agree with the court as to any *one* subsection of § 2511(a), as well as § 2511(b), to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We analyze the court's decision to terminate under subsection (a)(1) which provides:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may

be terminated after a petition filed on any of the following grounds:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

And subsection (b) provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

We begin our analysis with subsection (a)(1). To terminate parental rights pursuant to that subsection, the agency seeking termination must demonstrate through clear and convincing evidence that, for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrates a settled purpose to relinquish parental rights or that the parent has refused or failed to perform parental duties. ***See In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003).

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

***In re Adoption of Charles E.D.M.***, 708 A.2d 88, 92 (Pa. 1998) (citation omitted). Further,

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

***In re B., N.M.***, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted).

Father claims that DHS presented insufficient evidence to demonstrate that he refused or failed to perform parental duties or caused Child to be without essential parental care. We disagree.

Father only saw Child *once* after his release from prison on December 19, 2016—that visit occurred in May 2017. **See** N.T., Termination Hearing, 6/13/17, at 33. The only effort he made to find Child from December 19 until the May 2017 visit was to look for Child at Mother's last known address "like maybe a month after I was released." **Id**., at 32. His sole effort to maintain contact with Child while he was in in prison was the sending of monthly letters to Mother that Mother never answered. **See id**., at 31.

By his actions and failures to act, Father has evidenced a settled purpose of relinquishing his parental claim to Child or has refused or failed to perform his parental duties. As the court found: The court did not abuse its discretion when it terminated his parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1).

We next consider whether the court abused its discretion by involuntarily terminating Father's parental rights pursuant to subsection (b).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quotation marks and citations omitted; brackets in original).

Child is doing well in a pre-adoptive home where he has formed a bond with his foster mother. As mentioned, Father has seen Child for *one* visit—just *one visit* in the history of this case. Not surprisingly, we find no evidence in the record before us of a bond between Father and Child. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

The court did not abuse its discretion when it found that the termination of Father's parental rights would be in Child's best interests. Accordingly, we affirm the order of the Court of Common Pleas of Philadelphia County that terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b) and changed Child's goal to adoption.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/25/18